R. & B. SHOTWELL *v.* T. M. ELLIS & Co.

1. LAWS OF NATIONS: INTERCOURSE BETWEEN BELLIGERENTS: CONTRACTS BETWEEN CITIZENS OF UNITED AND CONFEDERATE STATES VOID.— By the general laws of war and by the Act of Congress of July 13th, 1861, all intercourse between the citizens of the Confederate and of the United States was forbidden, and all contracts made and entered into between citizens of the two sections are illegal and void; and it is the duty of courts so to declare, whether the illegality of the contract be pleaded or not.

ERROR to the Circuit Court of Hinds county. Hon. John Watts, judge.

The opinion of the court contains a statement of the case.

*Johnston & Johnston* for plaintiffs in error.

*D. Shelton* for defendants in error.

The briefs of counsel discuss mainly questions not referred to in the opinion of the court.

JEFFORDS, J., delivered the opinion of the court.

The action in this case was brought in the court below upon the following written contract:

"At Jackson, Miss., March 1st, 1863, Robert & Bourbon Shotwell, of Mississippi, and T. M. Ellis & Co., of St. Louis, Mo., have made the following agreement and covenants as follows : The said Shotwells agree to let the said Ellis & Co. have the present growing crop of 1863 on their plantation near Jackson, Miss. (Hinds county), and that on Honey Island in Holmes county, and their plantation on Cassady's Bayou in Coahoma and Tallahatchie counties of said State of Mississippi, at the rate of twenty cents per pound, payable in the State bank notes of Georgia, South Carolina, and Alabama, that are chartered and in good credit. Two thousand dollars as an advance payment on the same to be made by Sept. 1st, 1863, and one thousand by Nov. 1st, 1863, the residue to be paid as fast as said cotton may be baled, when it is to be delivered to the order of said Ellis & Co., who are to have an agent ready to receive it. The said Ellis & Co. guarantee the said Shotwells are not to be disturbed in gathering said crop, nor their property of mules, stock, and machinery for ginning and bailing said crops destroyed or interfered with by the authorities of the United States, or be deprived of their present negro laborers, so as to render them unable to comply with this obligation. The rope-bailing and twine necessary for putting up the above-named cotton is to be furnished by said Ellis & Co., at cost, to said Shotwells, at Fryer's Point, on the Mississippi river, in due time to be used for that purpose. The said Ellis & Co. are to procure for the said plantation, and laborers and property on the same, a protection from the United States authorities, should they at any time fall under the dominion and laws of the same. The said Ellis & Co. are not bound to pay for said property should it be destroyed, nor said Shotwells bound for the delivery of said cotton, should they from any cause be unable to do so. Should none be delivered, the money paid is to be returned, and the cotton to be delivered at the respective plantations.

" R. & B. Shotwell,

By Ro. Shotwell.

T. M. Ellis & Co."

The foregoing contract is endorsed as follows:

" Received, Jackson, Miss., August 30, 1863, of T. M. Ellis & Co., sixty-three dollars on the amount of this contract, payable on Nov. 1st, 1863.

" R. & B. SHOTWELL,<br>By Ro. SHOTWELL."

" Received, Jackson, Miss., Sept. 3d, 1863, of T. M. Ellis & Co., two thousand dollars on the within contract.

"R. & B. SHOTWELL,<br>By B. SHOTWELL."

The foregoing contract and endorsements were filed as necessary accompaniments to the declaration, in accordance with the requirements of our Code, as the basis of the cause of action.

The defendants pleaded the general issue and several special pleas, setting up various defences specially.

Some of these special pleas were replied to, and to others demurrers were interposed and sustained.

The pleadings are numerous and lengthy, but the view which we take of this case renders it altogether unnecessary for us to comment on this part of the record. This case is so remarkable in some of its aspects, that we have declined to consider the numerous questions presented and discussed by the learned counsel as arising upon the pleadings, instructions, and exceptions, and have confined our investigation to the point whether the Circuit Court should not, when it became apparent that the contract sued on was illegal and void upon its face, have dismissed the case at once.

The first three lines of the contract, and all its subsequent covenants and provisions, clearly disclose a state of facts showing this to have been a contract between the subjects of separate belligerent powers, and as such were enemies; which contract, by the general laws of war, and by act of Congress, was absolutely void in all its provisions. Perhaps no stronger illustration could be furnished of the evil consequences and nox-

ious character of such contracts as the one now before the court. The entire body of the contract is replete with conditions and covenants recognizing the warlike attitude of the country. It contains stipulations guaranteeing protection to laborers and property which might fall under the control of, and were liable to seizure by, the United States forces at any moment.

The Government of the United States was at the time of the execution of this contract, or very soon thereafter, enlisting and conscripting into its military service those very men whom T. M. Ellis & Co. were covenanting should remain unmolested by the Federal authorities on the plantations of the Shotwells. By the terms of this same contract, T. M. Ellis & Co. agreed that the mules and other property and materials used in the cultivation of the several plantations belonging to the Shotwells should not be disturbed by the Government of the United States, although the safety and success of the military operations of its armies might depend on their seizure.

When we reflect that the Shotwells resided *within* enemy's territory, that they were regarded by the laws of war and nations, by act of Congress and the public policy of the United States, as enemies ; that T. M. Ellis & Co. were citizens and subjects of the United States Government, and owed allegiance to it ; that in contemplation of law the Shotwells and Ellis & Co. were enemies to each other, and were therefore prohibited from contracting or even holding intercourse with each other ; and when, by looking to the terms of the contract itself, we find it so palpably and grossly violative of the public policy of the United States — we have unhesitatingly arrived at the conclusion, that it was the duty of the court below, whether the illegality of the contract was pleaded or not, to have at once, *ex mero motu*, put an end to all further proceedings.

We are fully sustained in this view of the subject by the rule as laid down by Lord Mansfield in the case of *Holman* v. *Johnson*, Cowper, 341. Lord Mansfield says, " No court will lend its aid to a man who founds his cause of action upon an immoral or illegal act. If from the *plaintiff's own stating,*

or otherwise, the cause of action appears to arise *ex turpi causa*, or the transgression of a positive law of this country, there the court says he has no right to be assisted." This doctrine is distinctly enunciated in the case of. *Griswold* v. *Waddington*, 15 Johnson, 57; same case, 16 id. 438.

The same principle is concurred in by the Supreme Court of Georgia, in the remarkably able and well-considered opinion in the case of *Adams* v. *Barrett*, 5 Georgia, 416, in which the court takes occasion to say, " So soon as it is made to appear that the contract is illegal, whether by the *plaintiff* or in defence, the courts will turn the parties from their doors."

The precise point now under discussion has been repeatedly decided in the same manner by the Supreme Court of Louisiana. See *Gil* v. *Williams & Davis*, 12 Louisiana Ann. Reps. p. 219; *Schmidt* v. *Barker*, 17 Louisiana Ann. Reps. 264. The question, we take it, is clearly and decisively settled upon authority. It will be found, when inquired into, that the *reason* of the rule is equally satisfactory.

Why do the courts refuse their aid to parties who have entered into contracts which are *mala in se* or *mala prohibita ?* It is not because of any tenderness or regard for the feelings or supposed rights of the contracting parties, but for the reason that they will not lend their assistance to parties *so defiled.* They are morally and legally regarded as being so *unclean* that the courts will not touch them, nor will they allow themselves to be touched by any such parties. They are banished outlaws from the halls of justice, and will not be permitted to approach and pollute its unsullied fountains. It matters not, then, when from the face and body of the contract itself it appears that it was entered into in violation of the law of the land, and whether defended against or not: it is the duty of the court, of its own accord and volition, without any suggestion from any source whatever, in vindication of its own purity and self-respect, to dismiss summarily any such cause of action.

Let the judgment of the court below be reversed, and the case dismissed at the costs of the defendants in error.